INHABITANTS OF WESLEY *versus* SARGENT & al.

In determining the true location of a line by a survey and plan, where the one does not correspond with the other, the less certain must yield to the more important criterion.

Thus, where upon a division line, the bounds of the adjoining townships are all determined by admeasurement, and by references to their corners as thus ascertained, and the range lines as projected upon the plan made on such survey, do not correspond therewith, the plan must be controlled by the admeasurement.

A direction to a surveyor by the proprietors of lands, to ascertain and determine certain lines of their townships, will not authorize him to establish a new line, or change the true one; and if he returns to them an erroneous location and they act upon it afterwards, without a knowledge of the error, they are not bound thereby.

Where a township is incorporated into a town by its *number*, the act has reference to the *true* lines of such township, although an erroneous line is the only one actually indicated upon the earth.

Of the costs of a survey.

ON REPORT from *Nisi Prius*, RICE, J., presiding.

TRESPASS, to recover the value of a lot of mill-logs. It was agreed, that the defendants were liable, if the logs were cut within the corporate limits of the town of Wesley.

After the evidence was out, it was stipulated, that the

full Court should render such judgment thereon as the law required, or grant a new trial.

The question involved the *true* northerly line of township No. 25, in the east division.

The territory in dispute is within the Bingham Penobscot Purchase.

The plaintiffs relied upon the Act of incorporation of Wesley, and the northerly line of township, No. 25, as run by B. R. Jones in 1828, under the direction of John Black, the agent of the proprictors, and who had before surveyed for him.

Before that time there were some settlers on township 25, and in 1828, Mr. Black sent to Jones a sketch of townships in the east divison laid down as in the diagram.

The dotted line represents Black's Road to Machias.

With the sketch were these directions:—"Before you lay out any more lots on Great Meadow Ridge, or on the road leading therefrom toward Machias, it will be well in running some town lines, to ascertain the precise situation of the settlement. You will take your departure from whatever

point you think best, but if the line between Nos. 19 and 20 is correct, from that you can easily fix the line between Nos. 25 and 26. Having determined the township lines, and ascertained the position of the great meadow ridge settlement, you will please to lay out some lots for the accommodation of settlers on the ridge, and likewise on the road laid out toward Machias. You will attend to this business as soon as you can, and when you have finished the job, you will send me a copy of your field book and plan."

Under these instructions Jones testified, that he first found the south-west corner of No. 20, or Crawford, by running from a point about half way of its southerly line where he had before run, and the line was spotted, the corner he was satisfied with; from this corner he run 160 rods, and there found or made a corner for the north-east corner of 25; that there were appearances which satisfied him there was a corner there previously, and from thence he run to the Black road, 526 rods, and was satisfied this was the north line of 25, and it agreed with all the State plans; he run these lines with the greatest care; he did not recollect of spotting it, but might have done so; he did not run this line across the township, and he made a return with plan to Col. Black.

Other evidence was introduced by plaintiffs tending to show the recognition of the Jones line.

By the Act of incorporation of Wesley in 1833, its northern boundary is thus defined; "beginning on the east line of township No. 31 in the middle division, at a point two miles north from the north line of township No. 25 in the east division; thence running eastwardly, parallel to said north line to the town of Crawford," and from thence township 25, east division, is included in Wesley.

The defendants relied upon an Act of Massachusetts, passed in 1786, describing the tract of territory designated for lottery townships, and constituting the Bingham Penobscot purchase, and introduced a book containing a copy of the State plan of said tract with all the townships laid down

thereon.   (No copy of this plan came into the hands of the reporter.)

He also introduced one Addison Dodge, whose testimony tended to show, that in 1833 he was sent by Col. Black to run the line between the middle and east divisions, and to mark the corners of the townships on that line; that he found an old corner at the north-west corner of 23, and also one at the north-east corner of 43.   At 43 it was marked in 1791; that he found an old line between 31 and 25 of the middle division, and a corner at the termination of it marked I. P. 1793; that the distances did not vary much from the State plan he had with him at the time; that he made the west line of 27, eight miles, and made a corner; that he run eight miles and 106 rods to the south-west corner of 26, east division; that he run six miles and 34 rods to the south-west corner of 25, east division; that he measured five miles and 30 rods to south-west corner of 24, east division.

It appeared that the same witness was requested by Col. Black in 1834 or 5, to run out township No. 25, east division; to find the north-west corner of it, and to add two miles on the north, and run a line parallel to the north line of 25, and if it could not be found, to take the lines he had run previously and run it out.   The northerly line run by Jones part way across the township, when run through to the division line, did not correspond to the corner he made in 1833, on that division line.   According to his running, from the intersection of the south line of 31, middle division, with the eastern line of that division, to his north line of 25, east division, was two miles and 27 rods, while the State plan made it one mile and 214 rods; and that he made it from the south line of 31, middle division, to north-west corner of 24, east division, four miles and 23 rods, while the state plan made it four miles and 140 rods.   The north line of 23, east division, was an old line, and the south line of 31 middle division, was an old line.   At the north-east corner of 43 was an old monument.   He formerly surveyed in the east division, and run the lines on the town-

ships therein, but never found any line run by Peters in the east division, except the ends of the lines upon the *division* line.

It appeared that beyond the north line of Wesley, as claimed by the plaintiffs, there was in No. 26, 14522 acres. In the disputed strip there was 3850 acres, and between the south line of the disputed territory and Dodge's north line of 25, were 7520 acres. South of the latter line in Wesley was 25695 acres.

Much other evidence was in the case.

*Walker,* and *Downes & Cooper,* for defendants.

*P. Thacher,* for plaintiffs.

1. The proprietors of No. 25 and adjoining townships had a right to fix the boundaries of that and other townships, to suit their own convenience or pleasure, where it could be done without interfering with rights vested.

2. Jones, proprietors' surveyor, by his letter of instructions of July 8, 1828, was expressly authorized to fix the north line of No. 25, east division, and he ascertained and fixed that line precisely according to the instructions given him by Black, the proprietors' agent.

3. The north line of No. 25, east division, so found by Jones, was afterwards repeatedly recognized by the proprietors as the true north line of that township, and for these reasons, they are estopped to deny it. *Stone* v. *Clark,* 1 Met. 378.

4. This line being well known and established, as the true north line of No. 25, east division, at the date of, and for many years prior to the Act of incorporation, the Legislature must be presumed to have intended Jones' line in such Act.

5. By the defendants' own showing, Dodge was never authorized to run any different line. His doings as to the north line of No. 25, east division, and the north line of Wesley, were wholly *sua voluntate* and bound nobody. Nor have the proprietors recognized more than partially his surveys or lines.

6. It was not competent for the proprietors by subsequently running a different line, even though the first was in any respect erroneous, to change the boundaries of the township as intended and fixed by the Legislature. Nor can they change the locations of the public lots or reservations, authorized and recognized by themselves, especially as other rights have intervened. *Brown* v. *Gay*, 3 Maine, 126; *Norris* v. *Hamilton*, 7 Watts, (Penn.) 9; 1 U. S. Dig. p. 474, art. 30, 32, 33, p. 477, § 77.

7. There is however no reason to doubt that Jones' survey was correct, and that his north line of No. 25, east division, is the true one. The defendants' testimony, so far as it is relevant, is controlled and rebutted by their own acts and declarations.

SHEPLEY, C. J. — The town of Wesley was incorporated by an Act approved on January 24, 1833, with a northerly bound "beginning on the east line of township No. 31, in the middle division, at a point two miles north from the north line of township No. 25, in the east division, thence running eastwardly parallel to said north line to the town of Crawford;" and these connected with other bounds include township No. 25, in the east division.

Rufus Putnam by virtue of an Act of the Legislature of Massachusetts, passed in the year 1786, made and returned surveys and plans of those divisions and of the townships included in them. The lines forming the exterior bounds of those divisions, appear to have been run and marked; while the range and check lines of the several townships included in the eastern division, do not appear to have been. The line between the two divisions, being an exterior line, appears to have been run, and the corner bounds of the several townships adjoining it appear to have been ascertained and stated by Putnam from actual admeasurement. The length of the westerly line of township No. 25, is by him stated to be six miles and thirty-four rods. By extending that line northerly to the line run by Jones for the north

line of that township, its length would be increased more than a mile, if the south line of the township be correctly exhibited on the plan taken in this case; and there is no satisfactory proof that it is not.

The west line of township No. 25, is by Putnam's survey and plan stated to be four miles and one hundred and forty rods on township No. 25, and one mile and two hundred and fourteen rods on township No 31, middle division. If the lines run by Jones were esteemed to be correct, township No. 25, east division, would be bounded on township No. 31, middle division, more than three miles, instead of one mile and two hundred and fourteen rods, as stated by Putnam. So, if Jones' line were regarded as correct, the west line of township No. 26, north of township No. 25, would be but seven miles and eighty-four rods instead of eight miles and one hundred and six rods, as it should be by Putnam's survey, assuming the north line of township No. 26, to be correctly exhibited by the plan taken in this case; and there is no testimony to prove that it is not.

As the westerly lines of the townships included in the eastern division, and adjoining the line dividing that from the middle division, were run by Dodge in the autumn of the year 1833, from an ancient monument at the north-west corner of township No. 23, to an ancient monument at the north-west corner of township No. 27, each township upon that line was found to have its measure nearly according to Putnam's survey.

The line run by Jones for the north line of township No. 25, according to Putnam's plan, would correspond with the south line of Crawford, but there is nothing to determine the distance between those two lines, except the space between them on the plan, while on the line between the two divisions the bounds of the townships adjoining that line, appear to have been determined by actual admeasurements, and by references to their corners as thus ascertained. These are of more certainty and of much greater importance than the space between the south line of Crawford

and the north line of township No. 25.   The less certain
and important must yield to that which is more, when all
cannot be correct.

There can therefore, be no sufficient authority for adopt-
ing the line run by Jones as the true northerly line of
township No. 25, according to the survey and plan of
Putnam.

It is however contended, that it must be regarded as the
true north line, because it was the first line run upon the
earth, and marked by monuments by authority derived from
the agent of the owners of the land.   The letter from their
agent, Black, of July 8, 1828, states it "will be well by
running some town lines to ascertain the precise situation
of the settlement."   "Having determined the township lines
and ascertained the position of the great meadow ridge set-
tlement, you will please to lay out some lots for the accom-
modation of settlers on the ridge, and likewise on the road
laid out towards Machias."

The power conferred upon Jones was that of ascertain-
ing the lines of the townships, not that of making them anew
or altering them.   When the letter speaks of "having de-
termined" them, no more was meant than having ascertain-
ed or determined where they had before been established.
If the north line of township No. 25, had not before been es-
tablished upon the earth by marked monuments, it had been
by Putnam's plan and admeasurements and by references
and measured distances from the corners of other townships
in the middle division.   Jones does not appear to have
been employed for the purpose of running and establishing
the line of any township or marking its position on the
earth, but only to ascertain their true position as already
established, to aid him in the accomplishment of another
purpose.   If he was misled by the position of the south
line of Crawford, and therefore regarded the north line of
township No. 25, as being further north than it really was,
the owners cannot be bound by that erroneous survey.
When Dodge run upon it subsequently in 1834 or 5, and

Wesley *v.* Sargent.

set monuments, he appears to have done so upon the assumption, that it had been correctly run. But when on coming to the line between the two divisions he became satisfied that it had not been, he abandoned it and proceeded to run the line from the monuments placed by him in 1833, for the north-west corner. The line therefore can have no effectual aid from the survey of Dodge.

It is further insisted, that the line run by Jones being the only one designated upon the earth as the north line, when the town of Wesley was incorporated, the Act of incorporation must have had reference to that line; and that it would thereby become established.

That Act refers to the townships in the middle and eastern divisions, and to them by their numbers. Those divisions and numbers existed only by the survey and plan of Putnam. Without a reference to them they could not be found. And when in the Act of incorporation, reference is made to the "north line of township 25, in the east division," it is obviously to the true north line; not to any particular line which had been run, and regarded by certain persons as the true line. The reference is not to the north line as run by Jones, or as established in a particular manner, but to the true north line.

The fact that Jones transmitted to Black a copy of his survey, and that no objection to it was made for five or six years, can have no material effect; for he appears to have supposed, that it might be correct, until the error became known by the survey of Dodge.

The conclusion is, that the line run by Jones, partly across from east to west, for the north line of township No. 25, was not the true north line; that it was not run by him by authority of the owners, for the purpose of having that line established; that it has not been recognized by the owners as the true north line, with a knowledge of all the facts; that the Act incorporating the town of Wesley

had reference to the true north line, and that it did not establish the line run by Jones as the north line.

*Plaintiffs nonsuit.*

TENNEY, HOWARD, APPLETON and HATHAWAY, J. J., concurred.

After the promulgation of this opinion, the plaintiffs objected to the allowance of the *entire* costs of the survey, in the taxation of the bill of costs before the presiding Judge at *Nisi Prius.* There was a docket entry, when the surveyor was appointed, that the expense should be finally determined by the Court. It was objected that the survey was made upon the motion of defendants, and at their pleasure, and against the wishes of plaintiffs, and that it did not necessarily follow, that because a party recovered costs, that he recovered *all;* and that this item should be apportioned; but CUTTING, J., presiding, ordered that the whole expense of the survey, $123,75, should be borne by plaintiffs. To which order exceptions were taken and allowed.

At the next law term, after argument of the question raised, the exceptions were overruled.